Entered on Docket
July 23, 2021
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

The following constitutes the Memorandum Decision of the Court. Signed: July 22, 2021



Roger L. Efremsky
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SANTA ROSA DIVISION

| | |
|---|---|
| In re<br><br>SONOMA WEST MEDICAL CENTER, INC.,<br><br>    Debtor.<br>_____<br>TIMOTHY W. HOFFMAN, Trustee in Bankruptcy of Estate of Sonoma West Medical Center,<br><br>    Plaintiff,<br><br>v.<br><br>SONOMA SPECIALTY HOSPITAL, LLC, et al.,<br><br>    Defendants.<br><br>And Related Counterclaim<br>_____ | Chapter 7<br>Case No. 18-10665 RLE<br><br><br><br>AP No. 19-1030 RLE |

**MEMORANDUM DECISION GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I. Introduction**

    The parties are familiar with the factual and procedural

*msj dec.*                       -1-

background in this case and it will not be repeated in detail here.

Following a four-day trial on the first phase of this case, on February 23, 2021 the court issued its ruling on what is known as the Threshold Issue. Docket No. 140 (the "Decision"). The court there determined that the estate of the Sonoma West Medical Center ("Sonoma West" or "Debtor") owned the pre-September 9, 2018 receivables (the "Receivables"), as plaintiff, its Trustee, asserted. The court has scheduled a trial on the second phase of this case to determine the amount Defendant and Counterclaimant Sonoma Specialty Hospital ("SSH"), and its parent, Counterclaimant American Advanced Management Group, Inc. ("AAMG") must pay to the estate for their unauthorized use of the Receivables (the "Damages").

The Trustee now moves for entry of an order granting partial summary judgment on the Counterclaims asserted by SSH and AAMG (collectively, "Counterclaimants" or, for ease of reference, "Defendants"). Memorandum of Points and Authorities, Docket No. 207. Each of the five claims stated in the Counterclaim is premised on the allegation that SSH and AAMG owned, and were entitled to use, the Receivables and have been damaged by the Trustee's competing claim of ownership. The Trustee asserts that the application of the law-of-the-case doctrine mandates summary judgment in his favor on each of the Claims asserted in the Counterclaim because the question of ownership of the Receivables has been established and the upcoming trial on Damages (i.e., the

*msj dec.* -2-

Case: 19-01030    Doc# 218    Filed: 07/22/21    Entered: 07/23/21 08:57:32    Page 2 of 16

actual amount of the Receivables collected and used by Defendants) will determine the remainder of this case.

Defendants respond that the court cannot or should not employ law-of-the-case, and because there are still triable issues of fact as to their damages which will either reduce or eliminate the Trustee's Damages, summary judgment on the Counterclaim is not appropriate. Opposition, Docket No. 209.

The court is not persuaded by any of Defendants' arguments. Defendants and their counsel are reminded of their duties under Bankruptcy Rule 9011(b): by presenting any position to the court, they are certifying that they have made reasonable inquiry, that it is not being presented to cause unnecessary delay or needless increase in the cost of litigation, that their claims, defenses, legal contentions are warranted, their factual contentions have evidentiary support, and their denials of factual contentions are warranted on the evidence. *See also*, *Weston v. Harmatz*, 335 F.3d 1247, 1256-58 (10th Cir. 2003) (court issued order to show cause re sanctions when parties repeatedly ignored previous binding rulings that were law of the case).

## II. Background

### A. The Counterclaim

In response to the Trustee's complaint seeking, *inter alia*, turnover of the Receivables as property of the estate, Defendants filed their Answer and Counterclaim. Dkt. No. 9.

The general allegations section of the Counterclaim describes the agreement between the Palm Drive Health Care

*msj decision*

District (the "District") and Sonoma West that ended as of September 9, 2018 (the "MSSA") and the agreement between Defendants and the District which replaced it (the "MSA"). Paragraphs 7-11. These paragraphs lay out the theory that the MSA is the "only operative contract" which gives rise to Defendants' claim of ownership of the Receivables.

From this starting point, the Counterclaim alleges the following story at paragraphs 8-24: (1) The Trustee interfered with Defendants' contract with the District by "wrongfully claiming" the estate "owned and/or was entitled" to the Receivables and "in blocking" SSH from collecting them (¶12). (2) The Trustee interfered with Defendants' contract with the District by "constantly claiming" that the estate "owned" the Receivables (¶18). (3) The Trustee continued to interfere with their contract with the District by "wrongfully obtaining" court process when the Trustee obtained a court order requiring transfer of funds to his custody (¶19). (4) The Trustee committed "fraud on the court" by "misrepresenting" that the Receivables "belonged to" the estate (¶22).

The First Claim at paragraphs 25-28 is for "tortious interference with contract" and incorporates the allegations of paragraphs 1-24. The First Claim alleges that the Trustee interfered with Defendants' contract with the District by his misrepresentations of ownership, by blocking their billing, by collection and use of the Receivables.

The Second Claim at paragraphs 29-34 incorporates paragraphs

*msj decision*

-4-

1-28. It alleges that the Trustee and his counsel "intentionally misrepresented" to Defendants that the estate owned the Receivables and this damaged them.

The Third Claim at paragraphs 35-38 incorporates paragraphs 1-34. It alleges the Trustee abused process and committed "fraud on the court" when the Trustee made these alleged misrepresentations of ownership to the court in order to obtain the turnover orders issued in the main case.

The Fourth Claim at paragraphs 39-43 incorporates paragraphs 1-38. It alleges the Trustee "converted" the Receivables by wrongfully taking possession and control over the funds under these prior turnover orders and by making demand for the Receivables in his complaint.

The Fifth Claim at paragraphs 44-48 incorporates all the prior paragraphs of each of the Counterclaims. It alleges that the Trustee is liable for damages due to his "gross negligence" because he "breached his duty of care" to the creditors of the estate by misrepresenting the estate's ownership of the Receivables when they did not "belong" to the estate because they were "owned" by Defendants.

Defendants ask for $15 million in compensatory damages and, in a truly astounding overreach, they also ask for punitive damages based on the allegation that the Trustee acted recklessly, maliciously, and wantonly. As the Trustee has pointed out, a simple request for declaratory relief regarding ownership would have sufficed. These tort claims were not necessary and

*msj decision*

-5-

have strained the resources of both the Trustee and the court.[1]

**B. The Trustee's Summary Judgment Argument**

The Trustee correctly articulates the summary judgment standard under Fed. R. Civ. P. 56, applicable here by Bankruptcy Rule 7056. According to the Trustee, the Decision on the Threshold Issue established that the estate owns the Receivables and this is now the law-of-the-case. None of the exceptions to its application are present and the court would abuse its discretion if it failed to adhere to it. Accordingly, the Trustee is entitled to summary judgment in his favor dismissing the Counterclaim.

**C. Defendants' Opposition to Summary Judgment**

Defendants argue that the law-of-the-case doctrine does not apply here because this court may not issue a final ruling on a non-core matter such as the Threshold Issue. They also argue that a final judgment is a prerequisite, citing *In re Brizinova*, 592 B.R. 442, 455 (Bankr. E.D. N.Y. 2018) (relying on *United States v. U.S. Smelting Co.*, 339 U.S. 186, 189 (1950) in support of this final judgment requirement).

Defendants next assert that the court is not rigidly bound to follow its former decisions especially where the facts are "still undeveloped." *See generally* 18B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*, §4478.1 (2d ed. 2015).

---

[1] Defendants' second through fifth affirmative defenses are duplicative of these Claims. Docket No. 9, p.11-13.

*msj decision*

They also argue that there are genuine factual disputes regarding the Claims in the Counterclaim because: (1) The estate has no right to be "reimbursed" from the Receivables based on Defendants' interpretation of the Debtor's contract with the District. (2) As a condition for "reimbursement" from the Receivables, the Trustee had to prove - and cannot prove - that the Debtor provided management services (as defined in the MSSA), which included paying all accounts payable and collecting the Receivables. (3) Because the Debtor's contract with the District was "terminated for cause," the Debtor lost the right to be "reimbursed" from the Receivables and lost its merely "inchoate ownership" interest in the Receivables.

**III. Discussion**

    **A. Summary Judgment Standard**

Fed. R. Civ. P. 56(a), applicable here by Bankruptcy Rule 7056, provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The movant bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). If this threshold is met, Rule 56(e) requires the non-moving party to identify facts that establish that there is a genuine dispute for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). That is, the non-moving party must present evidence from which a reasonable trier of fact could rule in its favor. *Id.* Rule 56(g) permits the court to

*msj decision*

enter an order stating that any material fact that is not genuinely in dispute is established in the case.

**B. Law-of-the-Case Standard**

The law-of-the-case is a discretionary doctrine based on the sensible notion that litigation must come to an end. Simply stated, "the law-of-the-case doctrine precludes a court from reconsidering an issue previously decided by the same court or a higher court in the identical case." *Ingle v. Circuit City*, 408 F.3d 592, 594 (9th Cir. 2005) (district court's interpretation of California contract law was law of the case; sanctions in the form of double costs and attorneys fees awarded for pursuing appeal totally devoid of merit). The doctrine has developed to maintain consistency and avoid reconsideration of matters once decided during the course of a continuing lawsuit. *Id*.

For the law-of-the-case doctrine to apply, the issue in question must have been decided explicitly or by necessary implication in the previous disposition. *Hall v. City of L.A.*, 697 F.3d 1059, 1067 (9th Cir. 2012). *See also, True Health Chiropractic v. McKesson Corporation*, 332 F.R.D. 589, 608-09 (N.D. Cal. 2019) (explaining law of the case applied following remand based on Ninth Circuit's clear ruling on issue in question in prior appeal).

A prior decision on an issue in the same case should be followed unless (1) it is clearly erroneous and its enforcement would work a manifest injustice; (2) intervening controlling authority makes reconsideration appropriate; or (3) substantially

*msj decision*

different evidence is adduced at a subsequent trial. *Ingle*, 408 F.3d at 594; *Galen v. Redfin Corporation*, 2015 WL 7734137, *3-4 (N.D. Cal. Dec. 1, 2015) (declining to apply law of the case to state court order following its reversal and removal of litigation to federal court, discussing finality requirement, meaning of changed circumstances and manifest injustice).

There is no requirement that there be a final judgment as Defendants suggest in reliance on language in *In re Brizinova*, 592 B.R. 442, 455 (Bankr. E.D. N.Y. 2018) which in turn relied on language from *United States v. U.S. Smelting*, 339 U.S. 186, 198-99 (1950). There need only be a final ruling on an issue. *Ingle*, 408 F.3d at 594. *See also Matter of Oil Spill by Amoco Cadiz off Coast of France on March 16, 1978*, 954 F.2d 1279, 1291-92 (7th Cir. 1992) (explaining cases generally have not relied on *Smelting* to limit law of the case to a decision on appeal from a final judgment).

Finally, summary judgment is an appropriate means to dispose of a case using the law-of-the-case doctrine. *Pubali Bank v. City National Bank*, 777 F.2d 1340, 1342 (9th Cir. 1985).

**C. The Decision Disposes of the Counterclaim**

1. The Law-of-the-Case Doctrine Applies.

Each Claim in the Counterclaim is based on the allegation that the estate does not own the Receivables and the Trustee caused Defendants damage by saying it did. The Decision conclusively and explicitly ruled that the estate owns the Receivables. This is now the law of the case and Defendants offer

*msj decision*

-9-

no basis for this court to exercise its discretion to depart from it. Nothing in the Defendants' Opposition shows that the Decision is clearly erroneous, or that there is some manifest injustice to Defendants in adhering to it. There has been no intervening change in the applicable law. They offer no new evidence to support their arguments against applying law-of-the-case. Finally, there is no merit to their finality arguments whether premised on the non-core nature of the ownership dispute or any other factor. In denying the Defendants' motion to withdraw the reference, the District Court agreed this court was the appropriate court to decide the Threshold Issue. Defendants may appeal any ruling of this court in due course.

2. Defendants do not raise any factual disputes.

Defendants' effort to contort their rejected contract interpretation arguments into disputed factual issues to make the Counterclaim viable simply does not work. Because they have no claim to ownership of the Receivables, the Trustee's claim that the estate did own the Receivables could not conceivably be the basis for any damages to Defendants.

Comparing the arguments they made at trial, which were rejected in the Decision, with the arguments they now make, by twisting them into factual questions, shows their utter lack of merit. Defendants essentially refuse to acknowledge that the Decision exists.

Defendants identify the first factual issue as whether the Debtor actually managed the District's hospital by paying its

*msj decision*

-10-

payables and collecting its receivables such that it had a right to be reimbursed from them, focusing on the language of §5.1 of the MSSA. Opposition, p.12:26-13:12. They challenge the meaning of "ownership" in the Decision on the theory that it "can only be viewed as an inchoate ownership interest which does not entitle the Trustee to be paid by reimbursement" because the Debtor did not pay all the hospital's accounts payable. Opposition, p.13:21-23. They repeat the argument that under the MSA, the District authorized Defendants to use the Receivables when the MSSA ended. Opposition, p.13:23-26 (the Receivables were retained by the District and Defendants were authorized to use them); p.15:7-10 (accrual referred to as ownership is an "empty vessel," and the District was "free to allow" Defendants to use the Receivables).

Defendants made the same arguments in their Post-Trial Brief. Post-Trial Brief, Docket No. 139, p.10:1-3 (following termination, Receivables remained property of District so Defendants could use them); p.10:17-19 (obligation to reimburse was discharged when MSSA ended, even if Receivables had accrued, Debtor's ownership ended); p.10:26-11:4 (Trustee failed to prove Debtor provided management services so estate has no right to be reimbursed from Receivables).

Defendants identify the second factual issue as a variation on this theme, describing it as a question of what management services were provided and what were their related costs, such that independent of a breach of the MSSA, and the termination and discharge analysis, there is a genuine issue regarding the extent

*msj decision*

-11-

Case: 19-01030   Doc# 218   Filed: 07/22/21   Entered: 07/23/21 08:57:32   Page 11 of 16

to which the Trustee is entitled to reimbursement under §5.1 of the MSSA and without a right to reimbursement there are no Damages. Opposition, p.15:20-28 (the only evidence that can be presented to the court is that accounts payable were not paid); p.16:10-11 (to extent Debtor cannot prove a right to reimbursement, Receivables defaulted to the District and Defendants could use them); p.16:6-7 (the "mere existence of accounts payable" owed by the estate "shows that the Trustee is entitled to nothing").

Defendants argued at trial that the Trustee could not prove that the Debtor's ownership of the Receivables had ever accrued because the Debtor had failed to provide the management services that were a predicate to ownership of the Receivables. Post-Trial Brief, p.23:12-23 (no evidence of management services so no right to reimbursement and no accrual). The Decision considered and conclusively rejected this argument, noting that the sufficiency of the Debtor's management services was not for Defendants to determine or quarrel with. Decision, p.12:1-28 (explaining meaning of accrual accounting under GAAP and its effect here); p.19:1-15 (the fact that the Receivables were generated by services provided by the Debtor during the term of the MSSA is conclusive on the issue of when they accrued and the question of the Debtor's pre-termination management services is irrelevant).

There are no disputed facts regarding "management services" or "reimbursement" that are relevant here. These so-called factual questions - which are in fact questions of contract

*msj decision*

-12-

interpretation - were raised, considered, and rejected in the Decision.[2] Defendants first and second factual issues do not provide a reason to deny summary judgment. The estate owns the Receivables. This is the law of the case. Nothing Defendants now argue changes the meaning of ownership in the Decision and the Trustee's ownership of the Receivables is not an "empty vessel."

In Defendants third alleged factual issue they reassert the theory that termination of the MSSA "for cause" discharged all of the District's executory obligations including the obligation to reimburse the Debtor, resulting in a loss of the "inchoate ownership" of the Receivables. Opposition, p.16:19-17:28. Defendants claim that the "implications of termination for cause" include discharge of the District's "executory" obligation to reimburse the Debtor. Opposition, p.17:24-18:3. They claim this left the Receivables with the District which was free to allow Defendants to use them. Opposition, p. 18:12-13 (ownership interest was lost resulting in District retaining control of the Receivables).

At trial, Defendants made the same argument that because the MSSA had been terminated "for cause," the Debtor was divested of any right to the Receivables. Post-Trial Brief, p.22:11-15 (even

---

[2] In their Post-Trial Brief, Defendants referred to "reimbursement" more than 30 times. Docket no. 139. In their Opposition, they refer to "reimbursement" more than 50 times. To suggest the court did not consider their reimbursement argument in the Decision because it only relied on §5.2 rather than §5.1 of the MSSA verges on sanctionable.

*msj decision*

-13-

if Debtor had a right to the Receivables, termination of MSSA for cause discharged District's executory obligations so it had no further obligation to pay management fee from pass-through revenue). The Decision found that this argument had no merit. Decision, p.15:15-22 (rejecting argument that right to accrued Receivables terminated when the term of MSSA ended); p.17:9-24 (rejecting argument that termination of MSSA for cause defeated ownership of accrued Receivables).

Defendants also argued at trial that once the MSSA was terminated, the MSA became the "only operative agreement" and, pursuant to its terms, the Debtor could no longer claim it owned the Receivables and SSH was free to use them without distinguishing between pre-termination and post-termination accrual. Post-Trial Brief, p.11:21-23 (the "only operative agreement" says the District owns the Receivables). The Decision rejected this argument as well. Decision, p.15:7-12 (the District could not assign the right to use the Receivables to SSH because the Debtor owned them); p.18:19-20:17 (explaining Debtor's right to accrued Receivables survived termination of the MSSA).

Defendants' third alleged factual issue merely restates old theories. The Decision clearly considered and soundly rejected Defendants' interpretation of the MSSA and the MSA, considered and rejected their argument about the "implications" of termination for cause, and considered and agreed with the Trustee's position regarding the meaning of "accrual." The law-of-the-case doctrine forecloses this attack on the Decision.

*msj decision*

-14-

## IV. Conclusion

The Trustee has met his burden for granting summary judgment on the Counterclaim and the court will dismiss it. Defendants have not presented any genuine factual issues that defeat summary judgment; they simply re-argue issues that were raised and determined in the Decision, dressing them up as factual issues.

It is the law of the case that the Trustee owns the Receivables. It follows that the Trustee did not tortiously interfere with Defendants' contract with the District by claiming to own the Receivables, did not intentionally misrepresent his ownership, did not abuse process or commit fraud on the court by doing so, did not convert any Receivables belonging to Defendants, or act in grossly negligent manner. By definition, Defendants have no damages arising from any of these Claims.

The Trustee is entitled to judgment in his favor dismissing the Counterclaim in its entirety. The Trustee is requested to submit an order conforming to this ruling.

* * * * * End of Decision * * * * *

*msj decision*

1 | Court Service List
2 | No service required.

*msj decision*